**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

H2OCEAN, INC., a Florida corporation,

        Plaintiff,

v.                                          Case No. 3:05cv387/RV/EMT

LEONARD SCHMITT, an individual; APRIL'S
AFTER-CARE, INC., a Florida corporation;
APRIL'S ATTIC, an unknown business association;
and LETHA SCHMITT, an individual,

        Defendants.
_____/

### ORDER

This case arises under patent law. Now pending is the plaintiff's motion for partial summary judgment (doc. 104). The defendants have filed a memorandum in opposition, and they have argued therein --- in what is tantamount to, although not styled as, a cross motion --- that the defendants are entitled to summary judgment in their favor (doc. 117).

**I. FACTS**

Except where otherwise noted, the following facts appear to be undisputed.

In 2001, Edward Kolos invented a product now known as H2Ocean.[1] H2Ocean is a topical spray mixture used as a disinfectant and healing aid in the tattoo and body piercing industry. Kolos filed a patent application for H2Ocean on June 20, 2003. The H2Ocean patent was issued on August 23, 2005; it was

---

[1]The defendants challenge that Kolos developed H2Ocean, arguing that the plaintiff has failed to put forth any admissible evidence to support the claim. Indeed, for this statement of fact in its motion, the plaintiff refers solely to disputed allegations in the complaint. Nonetheless, although not cited by the plaintiff, I note that on the face of the relevant patent, discussed further *infra*, Kolos is indeed listed as the "inventor."

assigned number 6,932,966 ("the 966 Patent"); and it contains, in relevant part, two claims. Claim one provides:

> 1. A skin treatment mixture comprising: sea salt, lysozyme and purified product of reverse osmosis of water.

And claim three provides:

> 3. A skin treatment mixture comprising: sea salt, lysozyme, purified water, and sodium benzoate.

The plaintiff alleges that Kolos "gave" the patent rights to the plaintiff, H2Ocean, Inc., which is a company that Kolos specifically created to manufacture and sell H2Ocean. As will be discussed, the defendants challenge this claim.

In or about October 2003, the plaintiff began selling H2Ocean to defendant April's Attic, a tattoo parlor in Pensacola, Florida. The plaintiff claims that it shared confidential information about the chemical makeup and manufacture of the product with the owner of April's Attic, defendant Letha Schmitt, in order to aid in its marketing efforts. The plaintiff also contends that it helped April's Attic establish a network of clients for the resale of the product. But, the defendants could not make any profit on H2Ocean because it was too small (4 oz.), it was expensive, and customers complained that the spray cans did not work properly. Thus, on March 8, 2005, April's Attic stopped purchasing the H2Ocean product from the plaintiff.

Several months later, in July 2005, April's Attic began selling a new disinfectant and healing aid spray called Perfect Piercing, which had been created by Letha Schmitt's husband, defendant Leonard Schmitt. Perfect Piercing combined the same essential ingredients as the patented H2Ocean: water, sea salt, lysozyme, and sodium benzoate, along with aloe, potassium sorbate, and FDC Blue #1. Mr. Schmitt formed a corporation, defendant April's After-Care, Inc., for the purpose of manufacturing and selling Perfect Piercing and other tattoo and piercing-related products to April's Attic.

In October 2005, the plaintiff brought this action against Leonard Schmitt, April's Attic, April's After-Care, Inc., and (later) Letha Schmitt, claiming that Perfect Piercing infringed on its patents for H2Ocean. The plaintiff seeks, *inter alia*, declaratory and injunctive relief. But, the defendants are no longer selling or distributing the allegedly infringing product. April's After-Care, Inc. was dissolved as a corporation on December 31, 2005 (two months after this action was filed, and less than six months after Perfect Piercing was first put on the market), and April's Attic was dissolved in July 2006. Nonetheless, this litigation has continued for almost two years. The plaintiff now moves for partial summary judgment, and the defendants argue that they are entitled to partial summary judgment.[2]

## II. APPLICABLE LAW

### A. Standard of Review

"Summary judgment may be appropriate in a patent infringement case, as in any other case." Guardian Pool Fence Systems, Inc. v. Baby Guard Inc., 228 F. Supp. 2d 1347, 1353 (S.D. Fla. 2002). Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); accord Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996).

---

[2]The operative complaint states five causes of action or grounds for relief: injunction (count I); declaratory relief (count II); patent infringement (count III); unjust enrichment (count IV); and theft of trade secret (count V). The pending motions for summary judgment only pertain to counts I, II, and III.

However, summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. Id.; see also Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On summary judgment, the record evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the non-moving party. National Fire Ins. Co. of Hartford v. Fortune Construction Co., 320 F.3d 1260, 1267 (11th Cir. 2003); Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Wenger Mfg., Inc. v. Coating Machinery Systems, Inc., 239 F.3d 1225, 1231 (Fed. Cir. 2001).

**B. Patent Law**

A claim for patent infringement generally involves a two-step analysis. "First, a court must determine as a matter of law the correct scope and meaning of a disputed claim term." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1365 (Fed. Cir. 2002); accord Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996); Virkler v. Herbert Enterprises, Inc., 403 F. Supp. 2d 1141, 1147 (M.D. Fla. 2005); Bristol-Myers Squibb Co. v. Andrx Pharm., Inc., 343 F. Supp. 2d 1124, 1132 (S.D. Fla. 2004). "Second, the analysis requires a comparison of the properly construed claims to the accused device, to see whether that device contains all the limitations, either literally or by equivalents, in the claimed invention." CCS Fitness,

Inc., *supra*, 288 F.3d at 1365; accord Virkler, *supra*, 403 F. Supp. 2d at 1147; Bristol-Myers Squibb Co., *supra*, 343 F. Supp. 2d at 1132. Ultimately, to prevail, "the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents." Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc., 261 F.3d 1329, 1336 (Fed. Cir. 2001); see also Litton Systems v. Honeywell, Inc., 140 F.3d 1449, 1454 (Fed. Cir. 1998) ("The essential inquiry is whether 'the accused product or process contains elements identical or equivalent to each claimed element of the patented invention.'") (*quoting* Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997)).

A device literally infringes a patent claim "only if every limitation of the claim is present in the device." Brita Wasser-Filter-Systeme GmbH v. Recovery Engineering, Inc., 41 F. Supp. 2d 818, 821 (N.D. Ill. 1999) (*citing* Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1532 (Fed. Cir. 1987)). "[A]ny deviation from the claim precludes a finding of literal infringement." Litton Systems, Inc., *supra*, 140 F.3d at 1454. The doctrine of equivalents, meanwhile, prevents competitors "from pirating the essence of an invention while narrowly avoiding the literal language of the claims." Brita Wasser-Filter-System, *supra*, 41 F. Supp. 2d at 821. "It is intended to prevent a competitor from making merely insubstantial changes" to the patented product and passing it off as a new product. See id.

With the foregoing in mind, I now consider the pending motions for summary judgment.

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

The plaintiff argues that Perfect Piercing infringes the 966 Patent --- either literally or under the doctrine of equivalents --- and, therefore, summary judgment is appropriate on the infringement claim (count III). Because there was infringement,

the plaintiff argues, then it follows that H2Ocean, Inc. is entitled to declaratory and injunctive relief (counts I and II). Whether viewed as a literal infringement, or by equivalents, I agree that the plaintiff has established infringement as a matter of law.[3]

Perfect Piercing was "created and developed" by defendant Leonard Schmitt a mere four months after April's Attic ceased purchasing H2Ocean from the plaintiff, and it contains all the elements as the patented product: water, sea salt, lysozyme, and sodium benzoate. The defendants do not really contest whether the additional ingredients of aloe, potassium sorbate, and blue coloring constitute a distinctively different product, and there is no evidence to indicate that it does. The only real attempt by the defendants to defeat the claim of infringement is to argue that the products are not the same because H2Ocean uses "purified water," whereas Perfect Piercing uses "filtered water." This argument is groundless and warrants little discussion. It is enough to say that H2Ocean was intended to have relatively pure water as its base, with no additives or additional ingredients in the water. Perfect Piercing, meanwhile, also had water in a similar level of purity as its base. Essentially, it was tap water in both products. There was no chemical need to have absolutely pure distilled water as the base, and neither did so. The purpose of the water was to accept the dissolved sea salt and thereby become the

---

[3]I note that this conclusion can be reached without the court first holding a Markman hearing. "Markman does not require a district court to follow any particular procedure in conducting claim construction." Ballard Medical Products v. Allegiance Healthcare Corp., 268 F.3d 1352, 1358 (Fed. Cir. 2001) (stating that district courts need not hold hearings and "exhaustively discuss" all claim construction issues raised by the parties before ruling on infringement claim) (*citing* Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)). The facts of this litigation are straightforward and the nature of the patent claims is not complex or technical. A Markman hearing is not necessary "where the technology is accessible to the court and the claims are relatively straightforward." Aspex Eyewear, Inc. v. E'lite Optik, Inc., 2001 WL 204775, at *1-2 (N.D. Tex. Feb. 27, 2001).

equivalent of uncontaminated sea water. The defendants obviously infringed the 966 patent, and, on the facts of this case, I find that any difference between "purified water" and "filtered water" is a distinction without a difference.

Although it is clear that the defendants infringed the 966 Patent, the plaintiff's motion for summary judgment must nonetheless be denied at this time. "[S]tanding to sue for infringement depends on preliminary proof of . . . title to the patent." Kahn v. General Motors Corp., 865 F. Supp. 210, 215 (S.D.N.Y. 1994); accord Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1551 (Fed. Cir. 1995) ("[O]ne seeking money damages for patent infringement must have held legal title to the patent at the time of the infringement."); Arachnid Inc. v. Merit Industries, Inc., 939 F.2d 1574, 1578-79 (Fed. Cir. 1991) (legal title to a patent and standing to sue resides with entity to whom the grant of patent is made or assigned). This case was filed and is being prosecuted by H2Ocean, Inc. As noted previously, the defendants dispute that H2Ocean, Inc. holds rights to the 966 Patent. Although the plaintiff has claimed that Kolos "gave" the patent rights to H2Ocean, Inc., the plaintiff has not identified any admissible evidence of an assignment to support the claim, which it was required to do. See generally Part II.A *supra*; see also N.D. Fla. Loc. R. 56.1(A) (party moving for summary judgment must file along with its motion a statement of facts that "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source"). Instead, for its claim to the patent ownership, the plaintiff relies solely on disputed allegations in the complaint. Insofar as the plaintiff has not directed this court to any admissible *evidence* establishing that it has title to the patent, there is a genuine disputed issue of material fact as to whether it has the standing to pursue this litigation. The motion for partial summary judgment (doc. 104) must be, and is, DENIED.

**B. Defendants' Cross Motion for Summary Judgment**

The defendants contend that they are entitled to partial summary judgment on the infringement claim because, again, they believe there is a dispositive difference between filtered and purified water. Because I have concluded that there was infringement (but summary judgment is not available to the plaintiff on this record), *a fortiori*, that means that the defendants' motion for summary judgment (doc. 117) must also be DENIED.

## C. Referral to Mediation

If H2Ocean, Inc. *does* have title to the 966 Patent, and thus standing to sue, it is perhaps reasonable to expect that the plaintiff will hereafter file a revised motion for summary judgment with proper evidentiary support. Before further relief is sought from this court, the parties are strongly advised to consider the following.

This case, which has been pending without abatement for almost two years, has been hotly-disputed and litigious from the very start. For example, the plaintiff filed its original complaint on October 7, 2005, to which the defendants filed two motions to dismiss. In response, the plaintiff moved to amend the complaint, which the defendants opposed. I granted the plaintiff leave to amend, after which the defendants again filed two motions to dismiss. The plaintiff opposed these motions. I later entered an order granting the motions in part, and denying them in part. The plaintiff filed a motion requesting clarification of my order, to which the defendants filed a brief in opposition requesting, *inter alia*, "an award of reasonable attorney fees to Defendants' attorneys for their unnecessary legal research to educate opposing counsel as to the Federal Rules of Civil Procedure." Thereafter, I granted the motion for clarification and allowed the plaintiff to amend the complaint again, which it did. The plaintiff then filed yet another motion to amend the complaint, and the defendants filed yet another brief in opposition. Throughout the foregoing, there was an interlocutory appeal to the United States Court of Appeals for the Federal Circuit and numerous discovery disputes that required resolution by the magistrate judge, including motions for protective orders, motions to compel, and

motions for sanctions. In total, the parties have filed approximately 20 motions in this case, almost all of which were opposed with memoranda or cross motions.

It should again be emphasized that the foregoing took place even though the defendants stopped selling the offending product *two months* after this case was first filed. According to the defendants, this case "put [them] out of business." When they were still in business, the defendants sold Perfect Piercing for no more than six months. During that time period, the defendants sold approximately 756 units. Based on the royalty charge agreement between the parties, the defendants have argued without contradiction that the total amount of damages to the plaintiff for the infringement is approximately $2,782.08. In other words, despite the fact that the defendants stopped selling the product two months after this litigation was filed, despite the fact that the infringing product was sold for a total of less than six months, and despite the fact that the actual damages appear to be less than $3,000, the parties have continued this heated and contentious litigation for almost two years, during which they have filed repeated and often baseless motions with the court. The facts and procedural history of this case call into mind the words of the late Elihu Root: "'About half of the practice of a decent lawyer is telling . . . clients that they are damned fools and should stop.'" McCandless v. Great Atlantic and Pac. Tea Co., Inc., 697 F.2d 198, 201-02 (7th Cir. 1983) (*quoting* A. Kaufman, *Problems in Professional Responsibility* (1976)).

The defendants have stated that they "initiated settlement discussions" with the plaintiff during the course of this case, but to no avail. The parties are advised to do so once again. By separate order entered contemporaneously herewith, this case will be referred to pre-trial mediation, at which both sides are expected to proceed in a good faith attempt to finally resolve this matter. I do not anticipate taking any further action in this case unless and until mediation is complete.

One final note. I recognize that the apparently *de minimis* damages are not likely the sticking point in this case; rather, based on the monthly time records filed

by the parties, each side appears to believe that it will be entitled to attorney fees if it is successful. The parties *should not* go to mediation --- or proceed further in this case --- under the mistaken assumption that if they later prevail on the merits then they will automatically be entitled to recover attorney fees. Without ruling in advance on this issue, I note that the award of attorney fees is left to my discretion and is reserved for special and unique cases. See 35 U.S.C. § 285 ("The court in *exceptional* cases *may* award reasonable attorney fees to the prevailing party.") (emphasis added); see also Forest Laboratories, Inc. v. Abbott Laboratories, 339 F.3d 1324, 1329 (Fed. Cir. 2003) ("In interpreting § 285, we have been mindful of the limited circumstances in which an award of attorney fees is appropriate. The Senate Report accompanying § 285's predecessor statute, which is applicable to the present statute as well, states that '[i]t is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits.'") (*quoting* S. Rep. No. 79-1503 (1946)).

### IV. Conclusion

For the above reasons, the plaintiff's motion for partial summary judgment (doc. 104) is DENIED. The defendants' motion for partial summary judgment (doc. 117) is DENIED. By separate order, the parties are referred to pre-trial mediation.

DONE AND ORDERED this 15th of August, 2007.

*/s/  Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**